IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | Criminal No. 3:23-cr-132 |
| | ) | |
| v. | ) | 18 U. S. C. § 371 |
| | ) | Conspiracy to Commit Bribery |
| KAYLA MARIE CRONIN | ) | (Count 1) |
| | ) | |
| Defendant. | ) | Forfeiture Allegation |

## CRIMINAL INFORMATION

The United States Attorney charges that:

### GENERAL ALLEGATIONS

At all times relevant to this Criminal Information:

#### Background

1.     The Federal Correctional Complex (FCC) in Petersburg, Virginia is a federal correctional institution administered by the United States Bureau of Prisons (BOP), a component of the United States Department of Justice, housing male inmates. FCC Petersburg is located within the Eastern District of Virginia.

2.     From on or about April 19, 2022, and continuing through on or about November 17, 2022, Co-Conspirator (CC) 1 was an inmate at FCC Petersburg. On or about November 17, 2022, CC-1 transferred to FCC Fort Dix in New Jersey.

3.     From on or about February 22, 2015, and continuing through present day, CC-2 is employed by the BOP as a correctional officer (specifically as a Pipe Fitter Supervisor), at FCC Petersburg. During his time as a correctional officer at FCC Petersburg, CC-2 led a work detail comprised of various inmates at the FCC, including CC-1. CC-1 was assigned to CC-2's work detail from at least June 29, 2022 and continuing until November 17, 2022, when CC-1 left FCC

Petersburg. At all relevant times, CC-2 was a public official as defined in Title 18 U.S.C. Section 201(A)(1).

4.     At all times relevant to the criminal information and the conspiracy, defendant KAYLA MARIE CRONIN was a resident of Kentucky. CRONIN was a friend and associate of CC-1's.

5.     Title 18, United States Code, Section 1791 and BOP regulations proscribe inmates' possession of "prohibited objects," a category that includes tobacco and anabolic steroids, a Schedule III substance under the Controlled Substances Act. CC-2's duties as a BOP employee included the enforcement of federal law and BOP regulations pertaining to inmates' possession of prohibited objects.

## COUNT ONE
(Conspiracy to Commit Bribery)

6.     The preceding paragraphs are incorporated by reference as though fully set forth herein.

7.     Beginning on or about October 4, 2022 and continuing through on or about December 16, 2022, the exact dates being unknown, in the Eastern District of Virginia and within the jurisdiction of the Court, as well as elsewhere, defendant KAYLA MARIE CRONIN did unlawfully, knowingly, and intentionally, combine, conspire, confederate and agree with co-conspirators, both known and unknown, to commit the following offenses against the United States, to wit: paying bribes to a United States Bureau of Prisons employee, that is, to directly, indirectly, and corruptly give, offer, and promise a thing of value to a public official, with intent to induce a public official to do and omit to do an act in violation of the public official's lawful duty, in violation of Title 18, United States Code, Section 201(b)(1)(C).

2

## Purpose of the Conspiracy

8.     A purpose of the conspiracy was for CC-2 to secretly use his position as a public official, namely as an employee of the BOP, by soliciting and accepting payments, gifts, and other things of value from CRONIN, CC-1, and others, in exchange for CC-2 doing or omitting to do any act in violation of his official duties as a BOP employee, including obtaining prohibited objects to provide to CC-1 for further distribution to inmates within FCC Petersburg. The purpose of the conspiracy was further for CRONIN, CC-1, and CC-2 to enrich themselves by effectuating the smuggling of prohibited objects into FCC Petersburg. The purpose of the conspiracy was further to conceal the smuggling operation from detection by law enforcement authorities, in order to make the smuggling of prohibited objects into FCC Petersburg a more effective and long-lasting criminal endeavor.

## Ways, Manner, and Means of Conspiracy

9.     The manner and means by which the defendants would and did carry out the conspiracy included, but were not limited to, the following:

   a.  CC-2 agreed with CC-1 to provide prohibited objects (including tobacco and anabolic steroids) to CC-1 for distribution to other inmates at FCC Petersburg and to not interfere with CC-1's distribution efforts. Moreover, CC-2 agreed with CC-1 that CC-2 would procure such prohibited objects and smuggle the same into FCC Petersburg, defeating BOP controls put in place to ensure such prohibited objects are not introduced into the FCC Petersburg prison population.

3

b.  In return for CC-2's agreement to facilitate the introduction of prohibited objects into FCC Petersburg by smuggling in the prohibited objects and for not interfering with CC-1's distribution, CC-1 promised to pay bribes to CC-2.

c.  To effectuate his payment of bribes to CC-2, CC-1 sent money to CRONIN through a separate co-conspirator intermediary, CC-3. Such money included money derived from the illicit sale and distribution of prohibited objects in FCC Petersburg. From on or about October 8, 2022, and continuing through on or about November 27, 2022, CC-3 sent CRONIN at least $16,900 via CashApp; CRONIN would thereafter distribute those funds between CC-1 and CC-2 while also keeping a portion of such funds for herself.

d.  CC-1 further instructed that CRONIN send CC-1's share of the proceeds of the smuggling operation to various associates (including to CC-1's mother).

e.  CC-1 designated for CRONIN the amounts to be paid to CC-2, and CRONIN in turn paid such amounts to CC-2, pocketing certain monies for facilitating the transaction. CC-2, in turn, procured and smuggled prohibited objects into FCC Petersburg (including tobacco products and anabolic steroids, a Schedule III controlled substance under the Controlled Substances Act), providing such prohibited objects to CC-1 to, among other things, sell to other inmates at FCC Petersburg.

f.   CRONIN, acting at CC-1's direction, delivered funds to CC-2 by mailing money to CC-2 by United States Postal Service (USPS). After mailing such funds to CC-2, CRONIN sent the USPS tracking number to CC-2 via text message.

g.   CRONIN also passed messages about the introduction of prohibited objects into FCC Petersburg between and among CC-1 and CC-2 to make the smuggling operation more effective and long lasting.

h.   To conceal their wrongdoing, CRONIN and CC-1 discussed the delivery of bribe payments to CC-2 in coded language, including referencing CC-2 as the "landlord" and "boss," and describing payments to CC-2 as "rent," items to be smuggled into the prisons as "bikes," "tools," and "motorcycles," and the illicit market for the prohibited objects in prison as the "bike shop." "Bike" was code for a $1,000 unit of contraband.

**Overt Acts**

10.   In furtherance of the conspiracy and to accomplish its objects, the defendant and her co-conspirators committed the following overt acts, among others, in the Eastern District of Virginia and elsewhere.

*Corrupt Agreement and October 11, 2022 Bribe*

a.   On or about October 4, 2022, CC-1 told CRONIN via recorded phone call: "The 'Landlord' comes back this weekend, it might happen this Friday [October 7, 2022]. The 'Landlord is in a tight situation and needs money. The 'landlord' the shop's been empty for a couple of months, so he's not

5

had rent money for 2 months. He gets back in town this weekend and we're ready to pay rent immediately."

b. Thereafter, on or about October 7, 2022, CC-2 called CRONIN to discuss where to send bribe payments.

c. Approximately two hours after her call with CC-2, on October 7, 2022, in a recorded phone call, CRONIN told CC-1 that she talked to CC-2. CC-1 directed Cronin to send $1000 to the "landlord," send $1000 to CC-1's mother, and keep $200 for herself. CRONIN then informed CC-1 that, "A different person contacted me about 10 minutes ago asking for my Cash App as well. I'm assuming that's from your sale?" to which CC-1 responded, "Yeah it's from the bike delivery." As the conversation continued, CC-1 told CRONIN, "The rent is $1,000 for him for that week you know and basically, the shop gets half, the Landlord gets half you know what I mean and then the odd number is the accounting fee, you know." CC-1 proceeded to instruct CRONIN to send the "rent" as cash in "one of those cardboard three day business priority mail things." The conversation progressed with CRONIN telling CC-1 that the "rent" is paid weekly, discussing the timing of when she should expect payments.

d. On or about October 10, 2022, CC-1 told CRONIN in a recorded phone call: "You'll get a call from ole boy in the morning and he'll give you that name. When he calls you just ask him if he wants it next day or just do the three-business priority." The same day, CC-1 told CRONIN in a recorded

6

phone call to "Keep an eye out for an odd number. Landlord should call you today and just tell him you'll next day the rent to him and just take the fees out of my money."

e.  On or about October 11, 2022, CRONIN sent money to CC-2 by mail. The same day, on or about October 11, 2022, CC-2 sent a text message to CRONIN asking for the United States Postal Service tracking number associated with the mail delivery of cash.   CRONIN responded by texting the tracking number for the shipment to CC-2.

f.  On or about October 12, 2022, CC-2 sent a text message to CRONIN: "Hey, after this package comes would you send the future ones to my new address?"   CC-2 then texted his home address in Colonial Heights, Virginia, located within the Eastern District of Virginia.

*October 17, 2022 Bribe*

g.  On or about October 13, 2022, CC-1 told CRONIN in a recorded phone call: "You should be seeing 16 come through here shortly and then they'll be some more coming, umm, you're only going to send the Landlord two this month or this week." CC-1 went on to tell CRONIN that he was notified of his transfer to FCC Fort Dix in New Jersey and that "as far as our business as far as the bike shop goes, I'm trying to work something out where things don't change." In the same conversation, with respect to another delivery, CC-1 instructed CRONIN to "send the Landlord the tracking number and what not you know. But I'm trying to work it out

7

were nothing changes. You know what I mean." CRONIN responded with, "Ok. And you said 25[00] going to him instead of 35[00]?" CC-1 responded, "No 2[000]," which Cronin acknowledged, "2[000] ok ok." CC-1 then stated, "Just 2[000] yeah and then the other 2[000] will go to me, you know." In this conversation, CRONIN agreed to pay CC-2 $2,000 and retain $2,000 for CC-1.

h. On October 17, 2022, at approximately 9:26 a.m., CC-1 told CRONIN in a recorded phone call that, "I told the shop, I sent an email out telling them to call you because you want to do Zelle, remember we talked about the 28[00] its going to be 32[00] instead. So keep an eye, I told the customers to call you first before they got the bikes off, so."

i. Thereafter, on or about October 17, 2022, CRONIN texted CC-2, "Good Morning! I'll be able to swing by the bank around 10am today before heading to the post office. Just double checking, I know things have been a little all over the place but do we need the regular priority mail or the next day priority mail for this one?" CC-2 responded the same day, "Whatever is good for you is fine. Just as long as it's the [new address in] . . . colonial heights va. . ." Thereafter, CRONIN sent CC-2 a United States Postal Service tracking number associated with the shipment of cash to CC-2.

8

*October 22, 2022 Bribe*

j.  On October 21, 2022, CC-1 asked CRONIN in a recorded phone call, "was you able to get the Landlords out." CRONIN then told CC-1 that she would go to the post office in the morning. CC-1 told Cronin, "Send the Landlord a text too telling him that will be going out in the morning." Cronin responded, "Ok."

k.  Thereafter, on or about October 21, 2022, CC-2 texted CRONIN to say, "Hey just checking to see if mail will hit before Wed. Going out of town next Wed and Thurs." CRONIN thereafter told CC-2, "I have the 1 day shipping envelope with me now. Work has been insane today I haven't been able to hit the bank and post office yet. Just got off the phone with [CC-1] and that'll go out tomorrow morning at the latest. So you should get it by Wednesday." CRONIN thereafter sent CC-2 a United States Postal Service tracking number associated with the shipment of cash to CC-2.

l.  On or about October 24, 2022, CRONIN texted CC-2, "Hey just wanted to check but you did get that package?" CC-2 responded, "Oh yes and thank you! Came Saturday around 2pm."

m.  On or about October 30, 2022, CC-1 asked CRONIN in a recorded call, "Do me a favor. Send the Landlord a text message and let him know that we are still working on bikes from last week, that no new bikes to be dropped off this week." CC-1 responded, "Ok, I'm gonna do that right

9

now while we're on the phone." CC-1 stated, "Just tell him, we're still working on bikes from last week . . . just say no new bikes this week, it's been a slow week." Thereafter, on or about October 30, 2022, CRONIN texted CC-2, "Hey there, [CC-1] wanted me to let you know we are still working on bikes from last week so no new bikes this week. It'll be a slow week." CC-2 responded, "Ok thanks!"

n. On or about October 30, 2022, CRONIN told CC-1 in a recorded call, "OK, ok sent." Later in the conversation, CC-1 stated, "I can still keep this shop up and running, and then start a new shop, you know what I mean." Additionally, CC-1 stated, "Because you know, for real for real, me getting Landlord, a shop Landlord that works with me the way the Landlords working with me now, that's very rare, you know. That's like a once in a lifetime opportunity, you know."

*November 27, 2022 Bribe*

o. On or about November 6, 2022, CC-1 told CRONIN in a recorded call to "Send the Landlord a message ok and just tell him, just say thumbs up." On or about November 7, 2022, CRONIN sent CC-2 a text message saying, "[CC-1] wanted me to tell you 'thumbs up.' Have a good Monday!" CC-2 responded, "Perfect You too."

p. On or about November 13, 2022, CC-1 asked CRONIN in a recorded phone call, "Do me a favor today, [] send the Landlord a thumbs up text message . . . next to that write the word Menthol." CC-1 then stated, "I

10

can't repeat that word." CRONIN asked, "Menthol?" CC-1 responded, "Yes Yes." CC-1 clarified that he did not want to repeat the word "menthol," stating "No I said I don't want to repeat that word." CRONIN apologized, to which CC-1 responded, "I got ya, I got ya. You know what I'm getting at." The reference to "menthol" pertained to smuggling tobacco products into FCC Petersburg.

q. On or about November 13, 2022, CRONIN sent CC-2 a text message: "[CC-1] said thumbs up and menthol." CC-2 responded, "Awesome! I'll be there with it Tues. Tattoo day tomorrow all day."

r. On or about November 15, 2022, CC-1 told CRONIN in a recorded phone call, "You should see a deposit come in tonight or tomorrow night. Now the shop's only taking in one bike this week not two. . . instead of sending the Landlord a 1,000 send him 1,500 and take that five out of my half, you know what I mean, that way I'll only get five this time." CC-1 then told CRONIN to "send the Landlord a text tonight, tell him the shop is going to need that measuring device. The measuring tool. They've got a wrecked bike and they got to square up the frame." The same day, CRONIN texted CC-2, "[CC-1] said the shop is going to need that measuring tool." CC-2 responded, "Ok thanks for the heads up!" The reference to "measuring tool" referred to prohibited objects to be smuggled into the prison.

11

s.  On or about November 20, 2022, CRONIN told CC-2: "[CC-1] wanted me to let you know that our clients a couple more days to clear last weeks order. We have the 500 from [CC-1] we just wanted to send it all at once. He said hold off on everything until last weeks bill is paid up. He also wanted me to ask you what the name of the workout vitamin that he's taking is."   CC-2 responded, "Oh ok thanks for the word and it's called anadrol 50."[1]   Later that day, CC-1 asked CRONIN in a recorded phone call, "Did the Landlord respond to ya?" CRONIN responded, "Yeah, he said that was fine." CC-1 then asked, "he didn't say what the name of the vitamin was." CRONIN responded, "Anadrol 50."

t.  On or about November 27, 2022, CRONIN told CC-2, "Hey sorry it's been slow. Didn't receive full payment. [CC-1] wanted me to let you know that we are sending his 500 and he's going to eat the other thousand and send that to you as well tomorrow."   CC-2 responded, "Oh ok and no apologies needed. Appreciate the word."   The next day, on or about November 28, 2022, CRONIN sent a tracking number to CC-2.

u.  On December 16, 2022, CC-1 told CRONIN in a recorded phone call, "You need to make sure the Landlord is still playing ball, cause he might not be, so go ahead and send him a message, maybe tonight and say hey, you know, trying to drop a bike off." CRONIN responded, "I will check

---

[1] Anadrol 50 (Oxymetholone) is an anabolic steroid and a Schedule III substance under the Controlled Substances Act.

with him tonight." CC-1 added, "I know some things have come up, so he may be, you know, stand backing right now." The same day, CRONIN texted CC-2, "Hey there! [CC-1] wanted me to check with you to see if we were still good. I know there's been some hold ups. He just wanted me to check incase we have anything else come in." CC-2 responded, "Yeah should be ok. Is he coming back?" CRONIN responded, "Back to that location? I don't believe so. . . I'll let him know you're still good if we have anymore orders come through."

(In violation of Title 18, United States Code, Section 371)

* * *

11.     In all, CRONIN and CC-1 sent multiple bribe payments to CC-2 with a total amount of such bribes exceeding $6,500 but falling below $15,000.

13

## FORFEITURE ALLEGATION

Pursuant to Rule 32.2 of the Federal Rules of Criminal Procedure, the defendant is hereby notified that upon conviction of any of the offenses set forth in Count One of the Criminal Information, she shall forfeit to the United States any property real or personal which constitutes, or is derived from, proceeds traceable to the violations charged in Count One above.

(All in accordance with Title 18, United States Code, Section 981(a)(1)(C), as incorporated by Title 28, United States Code, Section 2461(c)).

JESSICA D. ABER
United States Attorney

By:        /s/
Avi Panth
Virginia Bar No. 92450
Robert S. Day
Virginia Bar No. 90663
Assistant United States Attorneys
United States Attorney's Office
919 E. Main Street, Suite 1900
Richmond, Virginia 23219
Office Number: (804) 819-5400
Fax Number: (804) 771-2316
E-Mail Address: Avishek.Panth@usdoj.gov

14